45532. JONES v. JONES.
(369 SE2d 478)

GREGORY, Justice.

The appellee, Norma Jones, retained Diane Zimmerman to represent her in a divorce action against appellant, Larry Jones. Subsequently Larry Jones retained Charles Bond to represent him in the divorce action. Bond and Zimmerman have been married at all times applicable to this litigation. Bond and Zimmerman negotiated a settlement regarding temporary custody of the minor children and alimony which was made the judgment of the court. Zimmerman's law firm then filed a motion to disqualify Bond on the ground that Bond had a conflict of interest in the case by virtue of his marriage to Zimmerman. In this motion Mrs. Jones expressed her "fear" that confidences she had divulged to Zimmerman "will be conveyed" to Bond. While this motion was pending Zimmerman's law firm withdrew from the case concluding it had a conflict of interest due to an earlier representation of Mr. Jones.[1] Mrs. Jones retained new counsel who pursued the motion to disqualify Bond.

Following a hearing the trial court granted the motion to disqualify Bond. The trial court found no evidence of impropriety or breach of confidences by either Bond or Zimmerman. The court determined, however, that this case is factually distinguishable from *Blumenfeld v. Borenstein,* 247 Ga. 406 (276 SE2d 607) (1981) in that Bond and Zimmerman had "gone head-to-head" on the issues of temporary alimony and child custody.[2] The trial court concluded that in this case there was the appearance of impropriety coupled with a jeopardy to a client's confidences, and therefore under *Blumenfeld* disqualification of Bond was mandated for the protection of Mrs. Jones. We granted

---

[1] According to the record Mr. Jones retained a member of Zimmerman's law firm to represent him in the divorce action at the same time Mrs. Jones retained Zimmerman to represent her in the divorce action. Apparently, none of the individuals involved was aware of this conflict until some time later. Mr. Jones thereafter sought the representation of Mr. Bond.

[2] In *Blumenfeld* the married attorneys were associated with law firms which were on opposing sides of the case, but only the wife/attorney actively participated in the handling of the case.

Mr. Jones's application for interlocutory appeal.

In *Blumenfeld* we held that "[a]bsent a showing that special circumstances exist which prevent the adequate representation of the client, disqualification based solely on marital status is not justified." The court noted that

> [w]hile we cannot disagree with the proposition that the marital relationship may be the most intimate relationship of a person's life, it does not follow that professional people allow this intimacy to interfere with professional obligations. If this court endorsed a rule imputing professional wrongdoing to an attorney on the basis of marital status alone, it would be difficult to avoid the extension of that rule to other relationships as well.

247 Ga. at 408-9. Rather, this court held that the issue of attorney disqualification exists on a continuum.

> At one end of the scale where disqualification is always justified and indeed mandated, even when balanced against a client's right to an attorney of choice, is the appearance of impropriety coupled with a conflict of interest or jeopardy to a client's confidences. In these instances, it is clear that the disqualification is necessary for the protection of the client. Somewhere in the middle of the continuum is the appearance of impropriety based on conduct on the part of the attorney. As discussed above, this generally has been found insufficient to outweigh the client's interest in counsel of choice. This is probably so because absent danger to the client, the nebulous interest of the public at large in the propriety of the Bar is not weighty enough to justify disqualification. Finally, at the opposite end of the continuum is the appearance of impropriety based not on conduct but on status alone. This is an insufficient ground for disqualification. 247 Ga. at 409-410.

Thus, under *Blumenfeld,* there is no *per se* rule of disqualification based on marital status. A finding by the trial court of no actual impropriety on the part of the attorneys puts the inquiry at an end. Marital status is of no legal consequence under *Blumenfeld*. Marital status may be of some factual consequence in that it affords the *opportunity* for impropriety, e.g., communication of confidences, but opportunity for impropriety exists among lawyers who are not married. Neither would we disqualify a lawyer because opposing counsel is the lawyer's parent, child, sibling or other close relative.

We have found no authority, and none has been cited to us, for

the proposition that married lawyers who are involved in active litigation on opposing sides of a case must be disqualified. To the contrary, Formal Opinion 340 (September 23, 1975) issued by the Committee on Ethics and Professional Responsibility of the American Bar Association holds that:

> It is not necessarily improper for husband-and-wife lawyers who are practicing in different offices or firms to represent differing interests. No disciplinary rule expressly requires a lawyer to decline employment if a husband, wife, son, daughter, brother, father or other close relative represents the opposing party in negotiation or litigation. Likewise, it is not necessarily improper for a law firm having a married partner or associate to represent clients whose interests are opposed to those of other clients represented by another law firm with which the married lawyer's spouse is associated as a lawyer.

> A lawyer whose husband or wife is also a lawyer must, like every other lawyer, obey all disciplinary rules, for disciplinary rules apply to all lawyers without distinction as to marital status. We cannot assume that a lawyer who is married to another lawyer necessarily will violate any particular disciplinary rule, such as those that protect a client's confidences, that prescribe neglect of a client's interest, and that forbid representation of differing interests.[3]

As the trial court found no evidence of actual impropriety on the part of either Zimmerman or Bond, the disqualification was based on the appearance of impropriety which attached to their marital status. Under *Blumenfeld* this was error.

Having thus decided this case, the court recognizes the problems posed by the circumstances here and the varying circumstances which may arise in other cases. Part of the problem flows from the absence of clear guidance in the Code of Professional Responsibility. Therefore, we announce the court's intention to consider the adoption of a rule similar to that contained in the American Bar Association model code, and we invite comments from members of the Bar not later than November 1, 1988.

---

[3] See also ABA Model Rules of Professional Conduct, 1.8 (i) which provides, "A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship." The comments to paragraph (i) state that the disqualification "is personal and is not imputed to members of firms with whom the lawyers are associated."

*Judgment reversed. All the Justices concur, except Marshall, C.
J., Weltner, and Hunt, JJ., who dissent.*

WELTNER, Justice, dissenting.

1. In this case Bond and Zimmerman (husband and wife) op-
posed each other on behalf of their respective clients at a rule nisi
hearing. Subsequently, they negotiated on behalf of their clients a
settlement of temporary custody of the minor children and alimony,
which was made the judgment of the court. Zimmerman withdrew
from the case, and Mrs. Jones' succeeding lawyer pursued a motion to
disqualify Bond from further representation of Mr. Jones. The trial
court granted the motion.

2. The rule in *Blumenfeld v. Borenstein*, 247 Ga. 406 (276 SE2d
607) (1981), does not require reversal of the trial court's finding of
disqualification. There we stated:

> *Absent a showing that special circumstances exist which
> prevent the adequate representation of the client,* disquali-
> fication based solely on marital status is not justified.

> A per se rule of disqualification *on the sole ground* that an
> attorney's spouse *is a member of a firm representing an op-
> posing party* would be not only unfair to the lawyers so dis-
> qualified and to their clients but would also have a signifi-
> cant detrimental effect upon the legal profession. [Emphasis
> supplied.]

Id. at 408.

3. Consistent with the holding of the trial court, this case
presents, in gross, "special circumstances" as alluded to in *Boren-
stein*. They are:

(a) Zimmerman and Bond were the lawyers actually handling the
litigation for the contending spouses.

(b) Mrs. Jones disclosed confidences to Zimmerman during the
course of her representation. Zimmerman is no longer in the case, but
Zimmerman's husband continues to represent Mr. Jones.

4. We note the content of Rule 1.8 (i), American Bar Association
Model Rules of Professional Conduct, as follows: "A lawyer related to
another lawyer as parent, child, sibling or spouse shall not represent a
client in a representation directly adverse to a person who the lawyer
knows is represented by the other lawyer except upon consent by the
client after consultation regarding the relationship."[1]

---

[1] Under *Borenstein*, however, such a disqualification would not be imputed — "solely on
marital status" — to members of firms with whom the lawyers are associated.

In light of this analysis of *Borenstein*, and considering the values contained within the Model Rule, I believe that the trial court correctly ordered the disqualification of Mr. Jones' lawyer.

I am authorized to state that Chief Justice Marshall and Justice Hunt join in this dissent.

DECIDED JUNE 30, 1988.

*Charles V. Bond, Jr.,* for appellant.
*Charles R. Free, Oscar L. Crumbley, Jr.,* for appellee.